Good morning. The first case is 12-73381, Leal v. Holder. Each side will have 15 minutes. Ready for the petitioner? May it please the Court. Kara Hartzler for Petitioner, Edgar Leal. Good morning. Good morning. There's two main points I'd like to make today on the question of whether Arizona endangerment is a crime involving moral turpitude. The first point is that the endangerment statute does not contain any of the three elements that this Court has found necessary for a non-fraudulent offense to be a CIMT, which are intent to harm, actual harm, or a protected class of victim. The second point I will be making is that Mr. Leal's own case shows a realistic probability that a person may be convicted of is not a CIMT. I'm sorry? An element of endangerment is a substantial risk of imminent death. That has nothing to do with DUI. That's correct, Your Honor. But Arizona interprets endangerment to reach conduct that isn't a simple DUI. Wait, wait, wait, wait. Following up on my colleague, if you look at the definition of risk, which is in the second part of 13-1201, the second sentence says the risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. Well, this takes it away from somebody drunk doing their, you know, cleaning their car on the driveway or sitting around with a bunch of friends and having a beer. We're not talking about that. This is something that is a gross deviation from normal conduct. So how do you square that with what you just said to the Court? We acknowledge that the statutory language says that. But we don't just look at the statutory language. We look at how Arizona has interpreted the statute and what kind of conduct it reaches, what kind of things that people can do and still be convicted of Arizona endangerment. Give me an example of what you're referring to. My client's own conduct. In my client's case, all of the documents show that all he did was what we would consider a simple DUI. No, he created a substantial risk, not just a possible risk, but a substantial risk of imminent death. Not possible death and not injury. It was imminent death. Your Honor, I'd like to read from the factual basis for my client's conviction. What it says is that – well, I'm sorry. First of all, I'll talk about the – The article is the elements of the crime he was convicted of? Exactly. But I would go back to my argument, Your Honor, that we have to look at whether there is a realistic probability that he can be convicted for lesser conduct than the statute on its face says. Now, the PSR in my client's case, which is at AR 158, says, the defendant was weaving and traveling 20 miles per hour under the speed limit. He admitted to drinking two beers. His blood alcohol concentration was .17 slash .173. There's no evidence that he put anyone at greater risk of harm or greater risk of death. That's from the pre-sentence report? That's correct. What happened in open court? In open court, the factual basis was that he pleaded to simple DUI in combination with endangerment. And I have to tell you that in my experience, as well as in some of the authority we can cite, the simple DUI is the most common way that a person is convicted for an Arizona endangerment. Frequently what happens is that a person is charged with an aggravated DUI, which is a Class 4 felony, and then they plead down to a Class 6 felony endangerment. Suppose they were waving a gun around while drunk. Would that be a substantial risk? Yeah. I mean, we have Arizona cases dealing with guns, don't we? It could be, but we have to look at the minimum conduct under the statute. Moncrief told us, the Supreme Court told us, that we have to look at the least of the acts criminalized under the statute. And as my client's case, as the third case that's going today shows, as many other cases show, people are convicted every day for simple DUI for Arizona endangerment. Well, what distinguishes a DUI from endangerment, then? The endangerment actually codifies the element of the substantial risk. No, that's not what I'm asking you. I said, what distinguishes a DUI from endangerment? In terms of the conduct itself? Yeah, I mean, how come some people are convicted of DUI and other people, more serious behavior, are convicted of endangerment? To be frank, Your Honor, what happens is that people who are either on a suspended license or do not have a license, which usually includes people in Arizona who are undocumented, are charged not with simple DUI, they're charged with aggravated DUI, and then they plead down to endangerment plus simple DUI. So that's why some people, for instance, would just get charged with a simple DUI, but a person who does not have a license or who has a suspended license would get charged with an aggravated DUI and then plead down. And what class of offense is an aggravated DUI? It's a Class IV. An endangerment is a Class VI. It's two levels lower. So you're suggesting that what we need to look at is not what the statute says, but what actually happens from your perspective in Arizona courts? Yes. Obviously, the statutory language is the starting point. But what the Supreme Court held in Duenas-Alvarez is that we then, we can look at all of these other things if we can point to our case or another case in which Arizona has interpreted endangerment to reach conduct that would not be considered a crime involving moral turpitude. So that's exactly what we're saying in this case. What's your best case that Arizona has so, not in terms of day-to-day what's happening in the police department, what's your best Arizona case to show that, in fact, this statute has been used to have what you call a simple DUI? Our own case, as well as the third case that's going to be going here. So that's your best case? That's our best case. If the court would like other non-DUI examples, I'd be glad to provide those as well. For instance, there's a case called Juvenile Delinquency, I believe it's a Navajo court. What that said, if I can find it, I'll just explain. What that said was that a person can be convicted under Arizona endangerment for basically dropping water balloons on cars from an overpass. That's what I was getting at when I made my comment earlier about the definition of recklessness. The water balloon thing simply doesn't fit. It does not. To drop a water balloon, although in the case that you're talking about, the government made the point that that could cause somebody to swerve and put somebody in risk of imminent death. But here the statute itself says that it has to be a gross deviation from the standard of conduct that a reasonable person would undertake. So I gather it's your position that what your client did was not that. It wasn't. Then why did he plead guilty to it? Because he was charged with a higher offense and he pleaded down. So you're saying, ignore the statute, look what we do, not what we write. Is that what you're saying? Well, what happened was in Duenas-Alvarez, a lot of people, a lot of advocates, like myself, for instance, had been getting these very wild, you know, examples. Well, a person could be convicted under the statute for X or X or X. And there was not necessarily a chance that that would really happen. So what the Supreme Court said is we have to show a realistic probability that a person would be convicted under the statute for this conduct. And you do that. Under the statute as written.  Under the statute as written. Under the statute as written. But we have to look at how Arizona interprets it. So, in other words, it wouldn't be fair if you say, all right, well, we're going to assume that Arizona doesn't actually convict people for endangerment if it's a simple DUI. But that wouldn't be fair because we know they do it every day. Well, you know they do it every day. We have to look at what the law says. We have to look at what the cases say. Well, we also have to. If I understand you correctly, Counselor, you're saying that Leal v. Holder is your best case. It's absolutely one of our best cases. Absolutely. What's your second best case? The water balloon case. Another case I would point to is a case where there was. I mean the VIA dealt with the water balloon case, did it not? Discussed it? It did. And it found that it was, you know, a gross deviation. It was turpitudinous. And it said we have no qualms saying that's a simple DUI. Or that's a CIT. And the VIA talked about the model penal code. It talked about all these other jurisdictions that follow the same pattern. The whole idea of Taylor, which I loathe, but it's what we deal with. They said we're supposed to look at what's the generic law. And when you match the generic law here with the generic law as practiced by almost all the states, certainly the majority position and the model penal code, it fits exactly. At least it seems to me to fit exactly. So what I'm struggling with is you're saying, you know, a lot of people get drunk. It's just too bad. So don't worry about it. It's going to be okay. If somebody can drop a water balloon because they're drunk, we throw the whole thing out under Taylor. And I'm having trouble following that, counsel. If the court wouldn't mind, I'd like to switch to another reason that we could maybe discuss. For instance, let's say that this is exactly that we look at the statute as it's written. We don't look at the realistic probability. Let's put that aside for a second. Let's look at the elements of this. Now, traditionally, what this court and the BIA have required is some sort of aggravating circumstance. It can't just be a recklessness plus something else. In fact, as one of my colleagues is going to argue, it may not be able to be a recklessness at all. But what we've said in terms of defining what's a CIMT is you have to have some sort of evil intent. If you don't have an evil intent, if you have something lower, then you have to have actual harm as an element of the statute. That leads to my question. How does the en banc case of Cerrone affect this case? For exactly that reason, Your Honor, because Cerrone had that line where it said that there needs to be an inversely proportional relationship. In other words, as the scienter goes down, the element of actual harm has to go up. Now, here what we have is a very low mens rea. At most, we have recklessness. And as we're going to be arguing a little bit later, it may even drop lower than that. Recklessness as defined by the statute or like recklessness in some other context? Recklessness, I think that's a very open question, Your Honor. It's a very important question. It is a very important question. I think recklessness as Arizona defines it. Which is the statute. And which includes actual conduct that Arizona prosecutes people for. Let me ask here. They use the categorical approach here. Suppose we were to remand to have the modified categorical approach applied. What would your response be? I don't think that's appropriate, Your Honor, because I don't. And why not? I don't see the statute as divisible. First of all, there's no alternative terms within the statute. What we've got here is the term recklessness, which under DeCamp is an indivisible term. And the only other thing we've got is substantial risk, which like the term entry in DeCamp is also an indivisible term. But you were talking about additional things to make it aggravated. Correct. And the mens rea versus actus rea. If you were to apply the modified categorical approach, then would it be open to deal with the mens rea in addition to the actus reas? I just don't believe it would because I don't think those terms are divisible. We can't, after DeCamp, go behind the statutory language for divisibility purposes. In response to my colleague, then, what you're saying is this either stands or falls as a categorical analysis case, right? That's correct. Because this statute is not divisible, as the Court defined that in DeCamp. That's correct. So if we find, as you're stating, that as typically applied here, this doesn't meet the categorical analysis, then your client is scot-free. There's absolutely no problem under the law. Well, he's still convicted of the offense. It's just for immigration purposes. For immigration purposes, he's scot-free. Is that right? That's right, Your Honor. So if the Court would allow, I'd like to save my remaining time for rebuttal. Sure. Thank you. Thank you, Mr. Arkin. Good morning. Good morning. Good morning, Your Honors. May it please the Court, I'm Fred Sheffield on behalf of the Attorney General. We're asking that you deny the petition for review in this case because the Board's published decision in Leal is entitled to Chevron deference under this Board's precedent in Marmoleo Compost and other precedents. And as a result, the Court's examination is based on whether the Board's decision in matter of Leal is based on a permissible construction of the phrase, a crime involving moral turpitude. Counsel, help me with this. Chevron deference, as I understand it, is where an agency interprets a statute over which it has responsibility. The statute is vague, and the agency promulgates a regulation construing the statute. Is that your understanding as well? A regulation, or it could be through precedent decisions like this one. Okay. So in this case, you have the BIA construing an Arizona statute. I would, with respect, I would stop you there, and I would say that what the Board is actually doing is that they're construing the term crime involving moral turpitude. There's very little question about what the Arizona statute says. The statute is fairly plain. None of the Petitioners in these cases have made any arguments about what the elements of the Arizona statute is. What the argument is, is whether these elements, exposing someone to a substantial risk of imminent death, whether that conduct deviates so much from the... Okay. Well, you're going a different direction than what I'm inquiring. We're talking about Chevron deference. Right. I'm wondering whether it's Chevron or Skidmore deference we're talking about here, because I don't see where the BIA is construing a statute, or for that matter, even its own case law. It's a new statute. It's based on Silva Trevino, which now is maybe in some tension with the comp. So what I'm trying to understand from the government is what level of deference, if any, we owe the BIA when we look at this case. The question that you're asking is squarely answered by Marmolejo-Campos. Marmolejo-Campos dealt with exactly the same thing. That was an on-bank decision by the court, and that addressed precisely the question that you're asking. What level of deference is due to a published board decision where the board is interpreting the phrase, a crime involving moral turpitude? And the on-bank court was very clear that so long as the board's interpretation of the term crime involving moral turpitude is a permissible construction of the statute, that decision, the board's published decision, sustains. How do you resolve that? Well, let me ask you. Is there any tension between that interpretation of what the BIA did and the Cerron case that was cited by my colleagues? No, there's no tension there at all because Cerron was involving an offense for assault, which was even alluded to in the published decision in Leal. The board noted that it's cited to a case called Ruiz-Lopez, where in that published decision by the board, the board noted that assault cases have been treated in some respects differently. And indeed, if you examine the line of assault cases, you will indeed find a requirement for an aggravating dimension or an aggravating factor. So the fact that Cerron dealt with a crime with an assault with a deadly weapon, it's a different category of crime. But it did talk about the CIMT issue, and that's where the sliding scale came in. Is it the government's position that the sliding scale really has no bearing here because, number one, the BIA was not talking about an assault with a deadly weapon. It was talking about something different, that given the Arizona statute, given the fact that a majority of the states follow this exact format, that the model penal code treats it as a CIMT, that that is enough and that we give it what you're referring to as a Chevron deference. Is that right? Right. And more importantly, I think, is the fact that when the court is talking about the model penal code, they're not necessarily examining parts of the Arizona statute. They're observing that there are certain characteristics to the Arizona statute, but what they're really getting at is the idea of moral turpitude. And they're trying to map the phrase, they're trying to map the conduct at issue, the actus reus, which is exposing someone to a substantial risk of imminent death. They're trying to map that on to what Sylva Trevino described as one of the requirements for a CIMT, reprehensible conduct. That's the question that the board is getting to. And I'd like to ask this question. How can choosing to become intoxicated serve as a proxy for consciously disregarding a substantial and unjustifiable risk that is a gross deviation from what a reasonable person would do, even assuming a person, the actor, is aware that intoxication will impair his mental facilities? Does your contention assume he is aware that he will behave in a reckless manner while intoxicated? I don't know that you need to go that far. I think what we see in the case law, starting with the Supreme Court's decision in Egglehoff, which is a case that we cited in our decision, is that primarily for moral reasons, that when someone intoxicates themselves to the level that their actual awareness, actual awareness is now impaired, that we treat that act of becoming that voluntarily intoxicated as a proxy. So I don't think it's so much that we examine the actor's state of mind at the time that he was trying to get drunk. I think that the question is simply whether we would absolve someone of responsibility from a moral perspective simply because by their own choices they became so voluntarily intoxicated that they were unable to appreciate the risk that would be involved for a conviction. I guess what worries me about this is that even if we agree that voluntary intoxication is blameworthy as reckless, what do we really make of that? Because the criminal law, as I see it, is focused on deterrence and punishment, while immigration enforcement is not supposed to be punitive. Well, I think this is a problem that comes up in a lot of cases like this where we're trying to map the phrase, what we're trying to map state offenses onto the phrase a crime involving moral turpitude. It's a difficult question. It's a question that the case law shows has been grappled with by the board and many courts of appeals. But it's precisely because it's a difficult question that this court owes deference to the board, particularly when it issues a public decision on the matter. And to that end, I want to read something from the BIA's decision and get your impression of it. Sure. I am looking at page 24 of the board's decision, and they say treating voluntary intoxication as morally equivalent to recklessness embodies the sound principle that effectively choosing to become unaware of an obvious and unreasonable risk by deliberately impairing one's own mind is a culpable act akin to a conscious disregard of consequences. By defining recklessness to encompass acts resulting from voluntary intoxication, Arizona thus, in quotes, and I'm going to quote the U.S. Supreme Court, comports with and implements society's moral perception that one who has voluntarily impaired his own faculty should be held responsible for the consequences. And they cite U.S. Supreme Court case of Montana versus Egelhoff. Right. Is that the government's position in effect? Right. I was attempting to respond to Judge Nelson's question, is that the Egelhoff case embodies that principle. And the Egelhoff case is an interesting read. It documents the history of voluntary intoxication as it's been treated going back to the 18th century. And what you see is a tendency in pre-1900 to treat voluntary intoxication as an aggravating factor. It wasn't until around the turn of the century that courts started to think more clearly about what does mens rea actually mean. And based on that, there were some state statutes and cases that started to question whether someone may have the requisite mens rea where they're intoxicated. We treat drug use and impairment through drug use exactly the same way, do we not? For example, if somebody has a firearm and they've been doing speed or heroin or whatever, and they wildly flail about and shoot someone, we don't say, well, you really didn't think about this very much because you were on cocaine. That's cool. We don't say that, do we? No. What's the government's position when they prosecute somebody like that? Does it exculpate in any way the mens rea aspect? Well, the reason for that would be, I imagine, would be based on various state, the way that the state has structured their statutes. In some cases it might be that the state might define the mens rea to exclude that particular form of defense. In other states, and this was also set forth in the board's decision, other states might just limit the intoxication as an affirmative defense. And then in this case, the state of California specifically says, a person who creates such a risk but who is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk. So in other words, the state statute specifically says, it doesn't matter. If you're voluntarily intoxicated, you can't use that as a defense to the recklessness. Correct. Is that correct? The state, in effect, is anticipating that defendants might attempt to negate their mens rea by saying something to the effect of, well, I couldn't have had this mens rea because I was too intoxicated. And that is, the notion that that is not something that's appropriate is exactly what's explained in Egelhoff as dating back to the 18th century. But the opposing counsel keeps emphasizing we're looking to Arizona law, and Arizona law is not like California law. And, in fact, there are only 12 states, as I remember it, that have laws that are comparable to California. All the rest of the states have laws that are closer to those of Arizona and do not consider it voluntary intoxication at the point of being able to appreciate the substantial risk of recklessness. What do we do with the Arizona law? Well, I think it's, based on my reading of the board, the cases collected by the board, there's 11 states that treat Excuse me. Thank you for the correction. There's 11 states that treat it the same way that Arizona does. And then there's another nine states that As a defense. That will not allow you to use it as a defense. So we're already up to, I think, 21 states, including Arizona, all told that structurally we'll just not let someone raise a defense of intoxication as a way of not permitting the prosecution to establish mens rea. I guess my question is, is Arizona law relevant to our decision? Well, it's certainly relevant in the sense that that's what the petitioner was convicted of. He's committed a crime for which he will be punished. I mean, we agree to that. The question is, in Arizona, would it be regarded as morally turpitudinous? No, it's not. Whether the state of Arizona would regard this offense as morally turpitudinous is not at issue. All right. That was my question. Okay. It's what the board thinks, right? It's what the board thinks. The phrase crime involving moral turpitude is a phrase, I'm not sure if it exists under Arizona law, and it's really irrelevant. Because it's a phrase that appears in the INA, and that's what we're concerned about. We're concerned about how the Arizona statute, about which there's very little question. What Arizona law punishes is an Arizona law question, whether that's turpitudinous or not, I guess, is a federal question. Exactly, Your Honor. Which brings me to a point that Ms. Hartzler made. She says that under Arizona law, you can be convicted of the Class 6 felony of reckless endangerment just by committing a simple DUI. What's your answer to that? Well, my answer to that, I mean, what opposing counsel appeared to be convincing the court was that the realistic probability test should completely obviate the categorical approach, and that's simply not true. By looking at whether there's a realistic probability that a certain crime may have been outside of the bounds of a CIMT, we do not go into the facts of the case and undermine the notion that the defendant pled guilty to all of the statutory elements. So regardless of whether there's one Arizona case, and it's a case I think it's cited in one of the petitioner's briefs, State v. Villegas Rojas. It's 231 Arizona 445, and that's a case involving what appears to be much like a simple drunk driving offense. However, in that case, the court found that the statutory elements were met because someone was driving at a speed well over 100 miles an hour, and there were people on the road that they could have been endangering. The reason why, and I'm over my time right now, but if you'll permit me to finish this thought. The reason why driving under the influence is not, has not been held to be a crime involving moral turpitude, as per the Supreme Court's decision in the out, is because it requires no mens rea. It's not because any court has held that driving under the influence is not reprehensible conduct. It's that it requires, there's no showing of any form of requisite scienter. We're talking about an Arizona endangerment offense, which very clearly does have a scienter requirement. The scienter requirement is recklessness, and under this court's decisions, as well as the board's decisions, recklessness can be a qualifying mental state. Thank you. Can I just, oh sure, Judge Smith. Three quick questions. I want to see if you and opposing counsel agree on this. Do you agree that this statute is not divisible? As the board read it, the felony version of this statute, so the Arizona statute could be charged as a misdemeanor where there is a substantial risk of physical injury, and it could be charged as a felony where there's a creation of a substantial risk of imminent death. And so where we're talking about the felony variant, that statute is not divisible. The board didn't address, and it didn't really need to address, whether the statute as a whole is divisible or not. So under Descamp, since the statute is not divisible, were the court of a mind to send this back to the BIA? It could not reanalyze this on a modified categorical basis, right? If the court were to decide, were to disagree with the board's logic, I would nevertheless encourage the court to send it back to the board simply because it would be the board's decision, in the first instance. You're not quite answering my question. Okay. My question is, let's state it this way. This case can't be decided based upon a modified categorical analysis, right? The statute either rises or falls on the categorical analysis. That may or may not be the case, but that's not a question that the board addressed. And so that, I think, is a question. I agree that given the ‑‑ there have been a lot of changes since, especially with Rendon and especially with the board's new decision in Chavez, there have been a lot of changes since the board issued this published decision. But for that reason in particular, I think it would be wise to send this back to the board so that the board could make that decision in the first instance. Thank you, Mr. Sheffield. Ms. Hartzler, back to you. Go ahead. I'd just like to start by, I think, addressing some of the concerns that were raised by Judge Smith in terms of the level of culpability and what this conscious or decision to become voluntarily intoxicated, if you want to put it this way, whether that's related to this issue. What I want to impress upon the court is this. That absolutely is relevant in terms of whether we make this conduct illegal. But the question of whether that conduct rises to the level of a crime involving moral turpitude is an entirely separate question. But the board did use that and used that as the basis, at least part of its basis, for concluding that it was a CIMT, right? That's correct. But by doing so, the board sharply departed from all of its prior precedent, saying that there has to be some sort of aggravating circumstance. When you have a reckless mens rea, assuming that we have a reckless mens rea here, when you have a reckless mens rea, there has to be some sort of corresponding element of actual harm. And this statute has no such element. How about almost killing somebody? But there's no actual harm. Now, I'll contrast that, for instance, to a statute where the board did find that it was not a CIMT. For instance, in Madar-Fulao, there was a reckless mens rea and the statute contained an element of actual injury. Now, they found that that was not a CIMT. So here what we have is the board didn't do that. Alito, does the crime become more or less morally blameworthy if the person is almost killed as opposed to killed? Well, I would say almost killed is maybe, I would disagree with that characterization. Well, let's use imminent death. Well, first of all, in this case, for instance, as my case shows, perhaps, yes, the person put other people on the road in danger. Substantial risk of imminent death is what your guy was convicted of. I think that's a little bit different than saying my client was holding a knife to someone's throat and almost cut them. No, that's a different crime. That's a different crime. I'm not sure that I would agree with that, Your Honor. But my general point is this. I think that this Court and the BIA have always held that there has to be some sort of aggravating factor, which is when the reckless mens rea applies, actual harm, and there's just not an element of actual harm here. And there have been in other statutes, such as the maiden slaughter statutes. But the BIA went out of its way to say that wasn't necessary, didn't it? That you don't have to have actual harm in order to have scienter and have a crime involving moral perpetuity. And that's exactly why we don't think that it deserves Chevron deference, because that's a radical departure from what the BIA has always said. You said that it departed from all its precedents, right? I'm sorry? You said it departed from all its previous precedents? Yes, Your Honor. There aren't any exceptions? No. Why isn't a substantial risk of imminent death a type of actual harm, putting someone in that kind of risk? Let me point the Court to its own decision in Uppal, which was also an endangerment statute and included both actual harm and a risk of harm. This Court said in that decision that the statute was overbroad because only the risk of harm did not rise to the level of turpitude. So I would point the Court back to its own decision in that respect. What was the statutory language in that case? I don't have it at the tips of my fingers. Okay. Let's deal with the Arizona language. Okay. We're talking about a substantial risk of imminent death, not a possible risk of possible death or possible injury. So I don't understand why that isn't in itself a harm, a type of harm. Actual harm. Because it's never risen. I mean, the times, what the Court and the BIA have always defined to be actual harm is an element of, for instance, great bodily injury or manslaughter when there was an actual death. Just saying that there was a risk is never the type of harm that the BIA has ever said can rise to the level of actual harm. For us to rule in your favor, we would have to hold that putting someone in a substantial risk of imminent death, not just possible death, not just injury, but putting it all together, we'd have to find that that's not a type of harm. Right? We'd have to find that as a matter of law. And I think we would do so by looking at how Arizona interprets the statute, which, as I've said, includes simple DUI. And if we were to conclude that that is an actual harm, a type of harm, putting someone in substantial risk of imminent death, then we can't rule for you. Well, and if the Court chose to do so, it would also be going directly against BIA en banc precedent in Lopez-Mesa that says that that's not. Well, the BIA has told us what the BIA thinks, and they don't agree with you. And in this case, it seems like you're saying it's the lucky drunk who doesn't kill the guy that gets off well. Right? I'm saying. You don't hurt anybody, hey, good deal for you. You're not going to have a problem with the IJ. I'm saying that this is an inquiry of elements. And the way that Arizona has defined the element of substantial risk just doesn't cut it in terms of actual harm. That's what I'm struggling with, counsel. You're asking us to do this on a categorical basis, which means basically we don't get into the underground facts. We just look at the statute. And the statute's really clear, as my colleague has pointed out here. You're talking about something that is gross deviation from the norm, substantial risk of imminent death and bodily harm. That's what we look at. It really almost doesn't matter what your client did here. He pled guilty to this crime that had all of these elements in it, every single one of them. And you're saying, I gather, that the BIA has violated all of its precedents. It doesn't really matter what the majority of the states do. It doesn't matter what the model penal code says. What we're supposed to look at is what Arizona has actually done, and there's no proof of that, just what you're saying, in the way it treats these DUIs. And I'm struggling with that because your client, rightly or wrongly, pled guilty to this statute with each and every element. And the state of Arizona specifically says that, in the statute, that a determination of recklessness will not take into account whether somebody is voluntarily intoxicated. So I guess I'm troubled that it seems like you're saying that the lucky drunks are the ones who come off well because they don't actually kill anybody, doesn't matter whether they, you know, maybe had four or five DUIs before and they really may have hurt somebody, but this time they're lucky because they didn't hit anybody. Is that what you're really saying, that that's what the law is? Well, Your Honor, I think that there's an impression here that the realistic probability test is incompatible with the categorical approach. And it isn't. In fact, Duenes-Alvarez, which created the realistic probability test, did apply the categorical approach. And they said that that's an inherent part of the analysis. Okay. And how do we get the information about what's a realistic probability? When you look at this statute, how do we get the information that determines whether it is or it isn't? Duenes-Alvarez said that we look to the petitioner's own case or other cases. And Nicknor-Romero, this Court's decision, said that we can do that without a strict categorical approach. We can look at, for instance, charging documents. We can look at other unpublished cases. We can look at all those things. Do you have any evidence in the record that would back up any of what you've said about the way Arizona treats all these things, other than this case? I would rely primarily on ours. Okay. So basically the most important aspect of your case saying this is not, it's kind of out of the norm, but it's not realistically probable, you're saying just believe what I'm saying. It's not in the record, but believe what I'm saying, and you should base your case on that. I'm saying that we are satisfying what the Supreme Court said that we can do, which is pointing to our own case. And at AR-158, it shows that what my client, the conduct that my client was convicted of was akin to a simple DUI. Thank you. Thank you, Your Honor. Mr. Sheffield, thank you. This is a very well-argued case and is submitted at this time. Thank you.
judges: Nelson, Silverman, Smith